UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

SUSAN HOLLAN                                    CASE NO. 19-000778-5-DMW
                                                CHAPTER 11

    DEBTOR


BANKRUPTCY ADMINISTRATOR, and
KASPERS AND ASSOCIATES LAW OFFICES

Plaintiffs

v.                                              AP No.: 19-00162-5-DMW

SUSAN HOLLAN
    Defendant


## DEBTOR'S RESPONSE TO COMPLAINT OBJECTING TO DISCHARGE OF SUSAN HOLLAN

**NOW COMES** the Defendant, by and through undersigned counsel, and responds to the Complaint Objecting to Discharge of Susan Hollan filed by the Bankruptcy Administrator, Marjorie K. Lynch, on October 31, 2019 (DE 80) and joined by Kaspers and Associates Law Offices on November 7, 2019 (DE 82) as follows:

### JURISDICTION

1. Responding to Paragraphs 1 through 5, Paragraphs 1 through 5 are admitted.

### ALLEGATIONS

2. Responding to Paragraphs 6 through 11, Paragraphs 6 through 11 are admitted.

3. Responding to Paragraph 12, Paragraph 12 is admitted. The funds in Ms. Hollan's saving account were proceeds from the February 2015 sale of her home at 4010 Parian Ridge Road.

4. Responding to Paragraphs 13 and 14, Paragraphs 13 and 14 are admitted.

5. Responding to Paragraph 15, Paragraph 15 is denied. In general, consumer debtors have no obligation to keep books. American Commercial Capital Corp. v. Pisano (*In re* Pisano), 105 B.R.

125 (Bankr. S.D. Fla.1989). However, and crucially, Ms. Hollan's failure to keep books and records of how her money was spent *has not* prevented her from being able to verify how much of those funds were in fact spent. A detailed accounting of how $110,510 was spent is shown in the attached Exhibit A.

6. Responding to Paragraph 16, Paragraph 16 is admitted; however, the cause for those withdraws was not the fee statement of the Plaintiff, but, rather, the rapid change of life circumstances she was undergoing at that time. In the span of only a few years, she had suffered a multitude of health complications, lost a high-paying job, sold her house, and unsuccessfully sued her former employer for wrongful termination. Believing that payment of Plaintiff's fee was to be paid by the Defendant in the Georgia litigation, Ms. Hollan had little cause to be concerned by Plaintiff's notice of fees to her. In retrospect, her actions may seem odd, but when they occurred she had no reason to believe that she would ever have to explain them to anyone.

7. Responding to Paragraph 17, Paragraph 17 is denied. The validity of Plaintiff's claim against Ms. Hollan was, and remains, in dispute.

8. Responding to Paragraphs 18 and 19, Paragraphs 18 and 19 are admitted.

9. Responding to Paragraph 20, Paragraph 20 is denied. Ms. Hollan has explained that those funds were used for a down payment on her home, the purchase of a vehicle, medical and dental procedures, and ordinary living expenses.

10. Responding to Paragraph 21, Paragraph 21 is admitted. Mr. and Mrs. Teague are family friends of Ms. Hollan, she having attended high school with their son, Billy Teague. In 2012, as an informal estate planning device, Mr. and Mrs. Teague transferred to Ms. Hollan the ownership of a modest condo where their infirmed adult son, Billy, resided. Ms. Hollan did not ask for this and paid them no money, accepting the property only as a favor to them. She never lived in the house and never received income from it. Upon the instructions of Mr. and Mrs. Teague's attorney, William Flowe, she willingly and unquestioningly transferred the property back to the Teagues in the summer of 2017. This transfer was disclosed on Ms. Hollan's Statement of Financial Affairs.

11. Responding to Paragraph 22, Paragraph 22 is denied. Anticipating an avoidance action, and not wishing the Teagues to be unsettled by a chapter 7 Trustee's possible action against them, Ms. Hollan and Mr. Teague secured an appraisal of the property so that she could make a good faith offer, out of her own her retirement funds, to satisfy the Trustee's demand. Ms. Hollan has no reason to doubt the accuracy of that appraisal which estimated the value to be $22,000.

12. Responding to Paragraphs 23 through 25, Paragraphs 23 through 25 are admitted; however, correlation is not causation and the history and ownership of the condo existed entirely independent of either the Georgia litigation or Ms. Hollan's concern about money allegedly owed to Plaintiff.

13. Responding to Paragraph 26, Paragraph 26 is admitted. However, Mr. Teague is both infirmed and elderly and his testimony, while honestly given, was inconsistent, unreliable, and the content of it, on that point, vehemently disputed by Ms. Hollan.

14. Responding to Paragraphs 27 through 29, Paragraphs 27 through 29 are denied. However, it has always been Ms. Hollan's intent (as evidenced by her clear and full disclosure of the transfer in her Statement of Financial Affairs) to make the bankruptcy estate whole by paying the value of the property to the Trustee upon his demand. To lump in the transfer of the condo with Plaintiff's other allegations muddies the waters considerably and attempts to portray Ms. Hollan as having orchestrated a synchronized asset dump to avoid paying Plaintiff. In fact, the receipt and later divestment of the condo was, to Ms. Hollan, an unrelated and miniscule aside to her larger financial difficulties. When faced with the possibility of a chapter 7 trustee's legitimate chapter 5 powers, she gamely disclosed the transfer and stands willing to offer to the bankruptcy estate the value it lost upon the July 11, 2017 transfer.

15. Responding to Paragraph 30, Paragraph 30 is admitted.

16. Responding to Paragraphs 31 through 37, Paragraphs 31 through 37 are denied. Ms. Hollan's employer sometimes pays to its employees small annual bonuses based on the performance of various departments. Having been employed by Charter Communications for only a short time at the time when the case was filed, it is an astonishingly hyperbolic to allege that she knowingly made a "false oath" for not disclosing the possibility of receiving a small annual bonus. No bonus was received prior to the filing of the bankruptcy case.

17. Paragraphs 38 through 47 are conclusions of law that do not require a response.

WHEREFORE, the Defendant, Susan Hollan, respectfully prays the Court to dismiss the Complaint and for such other and further relief as this Court deems just and proper.

December 2, 2019                                SASSER LAW FIRM

/s/Travis Sasser
Travis Sasser
2000 Regency Parkway, Suite 230
Cary, N.C. 27518
Tel: 919.319.7400
Fax: 919.657.7400
Philip@sasserbankruptcy.com

| Description | Amount | Date |
|---|---|---|
| Tooth Implant Surgery and follow up dentistry | 3200 | Dec-17 |
| Cash to Attorneys | 8000 | Dec-16 $3000 Haley and $5000 Beltran |
| Cash deposits to cover checks to attorneys | 20,000 | Feb-17 $11,000 check for Beltran and $9000 check for Haley |
| Cash deposit to cover check for Roth | 6500 | Oct-17 |
| Medical supplies | 2000 | 2017 |
| House closing | 43,215 | Jul-18 |
| County Taxes | 1600 | Aug-18 |
| Home Insurance | 795 | Jul-18 |
| Floor Repair | 5000 | 2018 |
| Home Repair | 2000 | 2018 |
| Auto | 7000 | Nov-18 |
| Auto Insurance | 800 | Nov 2018 |
| Water Heater | 1400 | 2018 |
| Mortgage Interest | 5000 | 2018 |
| Cash Deposit - Check for Roth | 4000 | Jan-19 |